Filed 12/4/25  P. v. Taituave CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MIKE TAITUAVE,<br><br>　　　Defendant and Appellant. | B338375<br><br>(Los Angeles County<br>Super. Ct. No.<br>NA081157) |

APPEAL from an order of the Superior Court of Los Angeles County, Judith L. Meyer, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Susan Sullivan Pithey, Assistant Attorneys General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2010, a jury convicted Mike Taituave (appellant) of five counts of attempted murder for his part in a gang-related shooting, but found not true allegations that he personally used a firearm. In 2020, appellant petitioned for relief under Penal Code[1] section 1172.6, and the trial court summarily denied his petition without appointing counsel or holding a hearing. In 2021, we affirmed that denial because the statute did not then extend to those convicted of attempted murder. The Supreme Court granted review and transferred the matter back to us in 2022 to reconsider in light of Senate Bill No. 775. We then reversed and remanded the matter to the trial court to comply with the mandates of the newly amended statute, including by appointing counsel and holding a prima facie hearing.

On remand, the matter proceeded to an evidentiary hearing, after which the trial court found that appellant was the actual shooter and therefore ineligible for relief. The court's finding was erroneous because it contradicts the jury's finding not true the personal firearm use allegations. The error was harmless, however, because the jury instructions show that appellant is ineligible for relief as a matter of law. We therefore affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**1. Underlying crimes[2]**

Appellant and two confederates were members of the gang Sons of Samoa (SOS). The victims—four family members—were affiliated with the West Side Piru gang. These were the father, Joe Ho-Ching, the mother, Maria Ho-Ching, the daughter, Sheila Ho-Ching,[3] and Sheila's cousin, Faasooso Tautolo. Beginning in November 2008, the SOS gang vandalized the Ho-Ching residence.

---

[1] Undesignated statutory references are to the Penal Code.

[2] We draw these facts from the unpublished opinion from the direct appeal. (*People v. Taituave* (May 15, 2012, B225435).)

[3] We use first names for those family members who share a last name.

In February 2009, a gold Kia drove slowly by the residence several times. Sheila recognized appellant's codefendant, Johnny Filipo (Filipo), and another man, Ross Samana (Samana), as occupants of the car. Filipo flashed SOS gang signs, yelled derogatory words, and threatened, "I will be back." Joe called his son Daniel who lived nearby to see if he knew the people who were driving by his home. Daniel went to the Ho-Ching residence, and then drove around the neighborhood in search of the gold Kia, but did not see it. Moments after he returned to his parents' home, the Kia pulled up outside the home and Filipo waved to Daniel to follow him. Daniel drove after Filipo down the street. The other family members got worried when Daniel did not answer his cell phone, and they got into their car to look for him. As Joe was driving around looking for Daniel, he spotted the Kia driven by Filipo and turned to follow it. When he turned the corner, a man standing on the street shot into Joe's car, hitting Joe and Maria multiple times; both survived but required surgery. Sheila and Tautolo were in the backseat, but got down on the floor and were not hit. The man also shot at Daniel's car nearby and hit the car twice but did not hit Daniel.

Although Joe, Daniel, and Sheila all testified at trial that appellant was the shooter, Sheila had initially identified Samana as the shooter, and there was some evidence that Daniel did not identify the shooter when police first interviewed him.

## 2. Conviction and sentencing

The People charged appellant with one count of conspiracy to commit murder (§ 182, subd. (a)(1)), five counts of attempted murder (§§ 664, 187, subd. (a)), and five counts of assault with a firearm (§ 245, subd. (a)(2)). It was further alleged that appellant committed all offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)) and personally used and discharged a firearm causing great bodily injury (§§ 12022.53, subds. (b), (c) & (d), 12022.7, subd. (a)).

In 2010, a jury convicted appellant on all counts, found all five attempted murders to be willful, deliberate, and premeditated, and

3

found true the gang allegations. However, it found not true the firearm and great bodily injury enhancements.

Appellant was sentenced to a term of 90 years to life, composed of six consecutive terms of 15 years to life for the conspiracy and attempted murder counts. The assault sentences were stayed under section 654.

The judgment was affirmed on appeal, with the exception that the sentence on the conspiracy to commit murder count was stayed under section 654, reducing his total sentence to 75 years to life. (*People v. Taituave*, *supra*, B225435.)

### 3. Resentencing proceedings

Appellant filed a petition for resentencing under section 1172.6 on January 29, 2020. (*People v. Taituave* (June 21, 2021, B305271) [nonpub. opn.].) Without appointing counsel, the trial court summarily denied the petition on the grounds that appellant was not convicted of murder, and he was the actual shooter. (*Ibid*.) We affirmed this summary denial on appeal because section 1172.6 did not then afford relief to those convicted of attempted murder. (*Ibid*.)

The Supreme Court granted appellant's petition for review and ultimately transferred the case to us with directions to vacate our decision and reconsider the matter in light of Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), which amended section 1172.6 effective January 1, 2022, to expand eligibility for resentencing to those convicted of attempted murder under the natural and probable consequences doctrine and to clarify that the trial court must appoint counsel, permit briefing, and conduct an initial hearing to determine whether the petitioner has made a prima facie case for relief. (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 931; *People v. Coley* (2022) 77 Cal.App.5th 539, 544 (*Coley*).)

Because the trial court did not determine whether appellant was convicted of attempted murder under the natural and probable consequences doctrine or follow the requisite procedure of appointing counsel, allowing briefing, and holding a prima facie hearing, we reversed the trial court's summary denial and remanded the case for

4

the court to hear and determine appellant's petition in accordance with section 1172.6 as amended by Senate Bill 775. (*People v. Taituave* (Mar. 7, 2022, B305271) [nonpub. opn.].)

On remand, the trial court appointed counsel, received briefing, and held a prima facie hearing, after which it "granted" the "prima facie case" and set an evidentiary hearing. The transcript from the prima facie hearing is not part of the record on appeal.

On March 18, 2024, the trial court convened the evidentiary hearing. The parties submitted on the trial transcripts. After hearing the arguments from all sides (Filipo's petition was also at issue), the trial court took the matter under submission. The following day, it issued a ruling denying appellant's petition, finding him guilty under still valid law because he "was the shooter."[4]

## DISCUSSION

### 1. Applicable legal principles

The Legislature enacted Senate Bill No. 1437 in 2018, abolishing the natural and probable consequences doctrine in cases of murder and limiting the application of the felony-murder doctrine. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The legislation bars murder convictions premised on any theory of imputed malice—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine— unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless indifference to human life. (§§ 188, subd. (a)(3) & 189, subd. (e).) Specifically, the Legislature amended section 188 to require that, when the felony-murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)

---

[4] The court also denied Filipo's petition, finding that he was a direct aider and abettor.

Effective January 1, 2022, Senate Bill 775 amended section 1172.6 to expand its coverage to individuals convicted of " 'attempted murder under the natural and probable consequences doctrine.' "[5] (§ 1172.6, subd. (a); *People v. Saibu* (2022) 81 Cal.App.5th 709, 747.)

Section 1172.6 contains the procedure for vacating the murder convictions of defendants who could no longer be convicted because of the amendments to sections 188 and 189. (*Lewis*, *supra*, 11 Cal.5th at pp. 957, 959, 971.) After appointment of counsel (if requested), the trial court must permit briefing and hold a hearing "to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c); *Lewis*, at p. 971.) At this stage, the trial court can and should look to the record of conviction. (*Lewis*, *supra*, at pp. 970–971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry . . . allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) If a prima facie case is made—that is, if the petitioner is not ineligible as a matter of law—the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(1); *Coley*, *supra*, 77 Cal.App.5th at p. 543.)

Whether a petitioner has made a prima facie case for relief under section 1172.6 is a purely legal issue subject to de novo review. (*People v. Saavedra* (2023) 96 Cal.App.5th 444, 447.)

**2. Appellant is ineligible for relief because the record of conviction shows he was not convicted of attempted murder under the natural and probable consequences doctrine**

Appellant argues that the trial court erred in denying resentencing based on its own finding that appellant was the actual shooter because that contradicted the jury's finding that appellant had not personally used a firearm. Although we agree this was error

---

[5] It also codified *Lewis*'s holding with respect to the procedures required for determining whether a petitioner has made a prima facie showing. (Stats. 2021, ch. 551, § 1.)

6

(*People v. Arnold* (2023) 93 Cal.App.5th 376, 385; *People v. Henley* (2022) 85 Cal.App.5th 1003, 1017), it was harmless because appellant's record of conviction forecloses the possibility that he was convicted under the natural and probable consequences doctrine, and section 1172.6 "applies by its terms only to attempted murder[] based on the natural and probable consequences doctrine" (*Coley, supra,* 77 Cal.App.5th at p. 548).

The instructions given did not permit the jury to convict appellant under the natural and probable consequences doctrine. (See *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis"].)[6] Appellant insists otherwise, citing the language in CALJIC No. 6.11 on "Conspiracy—Joint Responsibility," that "[a] member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime of a co-conspirator to further the object of the conspiracy . . . ." But murder was the *object* of the conspiracy here, not the result of some act the natural and probable consequences of which was murder.

Appellant was convicted of conspiracy to commit murder, and such a conviction " 'requires a finding of intent to kill, and cannot be based on a theory of implied malice.' " (*People v. Medrano* (2021) 68 Cal.App.5th 177, 184, quoting *People v. Swain* (1996) 12 Cal.4th 593, 607.) Appellant argues that the conspiracy to commit murder charge "did not specify a . . . victim or group of victims" such that his conviction for conspiracy "could not establish an intent to kill the [five] attempted murder victims." We need not reach this argument, however, because the instructions on attempted murder also required

---

[6] Nor did either party refer to the natural and probable consequences in their arguments to the jury. (See *People v. Prettyman* (1996) 14 Cal.4th 248, 273 [because neither party referenced the natural and probable consequences doctrine, "it is highly unlikely that the jury relied on [it]"].)

the jury to find a specific intent to kill, and the jury convicted appellant on all five counts of attempted murder.

With respect to attempted murder, the jury was instructed that each of the following elements must be met: "1.  A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2.  The person committing the act harbored express malice aforethought, namely, *a specific intent to kill* unlawfully another human being." (CALJIC No. 8.66, italics added.)  The jury was also instructed that, "Each principal, regardless of the extent or manner of participation is equally guilty.  Principals include: [¶] 1. Those who directly and actively commit or attempt to commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission or attempted commission of the crime." (CALJIC No. 3.00.)  CALJIC No. 3.01 further instructed the jury that "[a] person aids and abets the commission or attempted commission of a crime when he or she: [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) By act or advice, aids, promotes, encourages or instigates the commission of the crime."  Our Supreme Court has declared that a jury receiving such instructions must consider the aider and abettor's own mental state and find that person independently possessed an intent to kill. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)  Because the verdict reflects the jury's determination that appellant personally intended to kill, he is ineligible for section 1172.6 relief as a matter of law.

8

**DISPOSITION**

The trial court's order is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



CHAVEZ, J.



SIGGINS, J.*

---

* Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.